## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

| | | |
|---|---|---|
| TINA L. WEATHERLY, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | No. 4:23-cv-00878-JJV |
| MARTIN J. O'MALLEY, | * | |
| Commissioner of the | * | |
| Social Security Administration, | * | |
| | * | |
| Defendant. | * | |

### MEMORANDUM AND ORDER

Tina L. Weatherly has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for disability insurance benefits. Both parties have submitted briefs, Plaintiff has replied, and the case is ready for a decision.

Ms. Weatherly was previously found to be disabled as of January 29, 2020. (Tr. 1350.) At her request, an Administrative Law Judge (ALJ) considered Ms. Weatherly's disability from the period of May 1, 2018, to January 28, 2020, and concluded she had not been under a disability within the meaning of the Social Security Act, because she could perform some of her past relevant work despite her impairments. (Tr. 1259-1274.) From this decision, Plaintiff appeals.

This review function is extremely limited. A court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and to analyze whether Plaintiff was denied benefits due to legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, courts must consider evidence that detracts

1

from the Commissioner's decision as well as evidence that supports it; a court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The history of the administrative proceedings and the statement of facts relevant to this decision are contained in the respective briefs and are not in serious dispute. Therefore, they will not be repeated in this opinion except as necessary. After careful review of the pleadings and evidence in this case, I find the Commissioner's decision is supported by substantial evidence and Plaintiff's Complaint is DISMISSED.

Plaintiff is 59 years old. (Tr. 1289.) Ms. Weatherly testified she started the twelfth grade in school but "then took [her] GED." (*Id*.) She has past relevant work as a trucking dispatcher and administrative clerk. (Tr. 1273.)

The ALJ[1] found Ms. Weatherly had not engaged in substantial gainful activity since May 1, 2018 - the alleged onset date. (Tr. 1262.) She has "severe" impairments in the form of "lumbar degenerative disc disease; disorders of the bilateral knees; carpal tunnel syndrome; obesity; and urinary incontinence." (*Id*.) The ALJ further found Ms. Weatherly did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 1266-1267.)

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2] 420 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

The ALJ determined Ms. Weatherly had the residual functional capacity to a reduced range of sedentary work.  (Tr. 1267.)  Based in part on the testimony of the vocational expert, (Tr. 1307-1311), and his residual functional capacity assessment, the ALJ determined Plaintiff could perform her past work as a trucking dispatcher.  (Tr. 1273-1274.)  Accordingly, the ALJ determined Ms. Weatherly was not disabled.  (Tr. 1274.)

The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making his decision the final decision of the Commissioner.  (Tr. 1249-1254.)  Plaintiff filed the instant Complaint initiating this appeal.  (Doc. No. 2.)

In support of her Complaint, Plaintiff argues the ALJ erred by failing to find her mental impairments "severe."  (Doc. No. 12 at 14-21.)  She specifically argues, *inter alia*:

> The ALJ himself acknowledged that there is evidence of record showing Weatherly's mental state had changed since the time she had been working, as he noted that examinations revealed abnormal mood, including depressed mood and anxious affect (Tr. 1264). As the ALJ's summary recognizes (Tr. 1264), when Weatherly underwent psychological evaluation by Dr. Eberle on February 16, 2018, her report of symptoms included an up and down mood, having to make herself do things, nothing making her happy, worrying a lot, an irrational fear of dying from cancer, anxiety in the morning, some suicidal thoughts, and not sleeping well (Tr. 399). On mental status examination, Weatherly demonstrated an "unhappy" mood and dysthymic affect3 (Tr. 400). Dr. Eberle diagnosed major depressive disorder with anxious distress, and increased Weatherly's current dose of Lexapro from 10 mg. to 20 mg., and added Trazodone, while also recommending therapy (Tr. 400). The need to increase Weatherly's Lexapro dose, and add another antidepressant, Trazodone, as well as the need to start individual therapy, belies the ALJ's conclusion that there was a lack of evidence showing change in Weatherly's mental state from the time when she had been working.

(*Id.* at 16.)

A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities.  *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. § 416.920(c) (2007).  It has "more than a minimal effect on the claimant's ability to work."  *Hudson v. Bowen*, 870 F.2d at

3

1396; *accord, Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *Page v. Astrue*, 484 F.3d 1040,

1043 (8th Cir. 2007).

> (a)   *Non-severe impairment(s).*   An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
>
> (b)   *Basic work activities.*   When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.   Examples of these include--
>
> (1)   Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
>
> (2)   Capacities for seeing, hearing, and speaking;
>
> (3)   Understanding, carrying out, and remembering simple instructions;
>
> (4)   Use of judgment;
>
> (5)   Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6)   Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521 and 416.921 (2007).

After careful review, I find the medical evidence provides substantial evidence to support

the ALJ's decision.   The ALJ went to great length to explain his reasoning as to why he concluded

Plaintiff's depression and anxiety were not "severe" impairments.   The ALJ stated:

> Finally, the claimant's medically determinable mental impairments, including depressive and anxiety disorders, considered singly and in combination, do not cause more than minimal limitation in her ability to perform basic mental work activities and are nonsevere. Specifically, consistent with testimony at the hearing, the record reflects a history of mental health symptoms such as depression since prior to the relevant period, and including testimony that she was struggling with remembering things towards the end of her work (Ex 2F p.  15-17). The claimant reported in the record and testified at the hearing that she has experienced her mental health symptoms all of her adult life (Ex 4F; 10F p. 2-3). However, she reported in January 2018, prior to the alleged onset date, that she was able to function well at work (Ex 4F p. 4). This evidence, coupled with the lack of evidence that there has been any noted change in her mental functioning since prior to the alleged onset date, suggests that her mental impairments do not interfere more than minimally in her ability to perform work activities. Subjective symptom reports include little motivation or interest in activities, anxiousness, and stress regarding finances (Ex 4F p., 2, 25-26, 30; 9F p. 3; 17F; 18F; 25F). There are observations of abnormal mood, including depressed or anxious affect; however, she was otherwise observed as pleasant or cooperative with normal thought process and appropriate mood and affect (Ex 4F p. 25-26, 30; 9F p. 3-4; 10F). She has been prescribed

4

medications for her symptoms, and there are reports and evidence of generally positive response to treatment (Ex 18F p. 17, 18). In June 2019, the claimant reported that she did not believe her counseling was helping but that she was stable on her medications and active in her church, which was helping with her symptoms (Ex 31F p. 25). The evidence does not establish that any more than conservative treatment has been required for her mental health symptoms during the period under consideration.

. . .

The undersigned also considered the opinions and prior administrative medical findings when evaluating the claimant's mental impairments. Specifically, in connection with the claimant's present applications, the State agency psychological consultants at the initial and reconsideration levels found a mild limitation in concentrating, persisting, and maintaining pace and no limitations in the remaining "paragraph B" areas of mental functioning, thus concluding that her mental impairments were nonsevere (Ex 2A; 4A). These were generally supported with reference to the medical evidence, including her subjective reports that her mental health symptoms are closely related to her physical issues and other situational stressors (Ex 2A; 4A). Moreover, they noted the claimant's mental health treatment, including medication prescribed by her primary care provider, coupled with observations that were largely normal apart from some anxiousness and nervousness (Ex 2A; 4A). The assessments are somewhat consistent with the longitudinal record. Notably, records from therapy sessions suggest that she continued to pursue additional treatment for her symptoms, and she testified at the hearing that she is consistently worried about something (Ex 17F; 18F; 25F). Generally, the record does reflect some mild limitations in the other "paragraph B" areas of mental functioning, particularly given her anxiety and nervousness coupled with observations of tangential, long-winded speech (Ex 9F p. 4; 10F p. 4-5; 14F p. 2). As such, these assessments are considered somewhat persuasive.

In November 2018, the consultative psychological examiner evaluated the claimant and noted the following: she could independently function and complete her basic needs; communicate with others in her typical environment; sustain attention for work-like tasks in similar environments; and that her ability to complete tasks would depend on her motivation to do so (Ex 10F). There is some support for these statements, including the claimant's subjective reports as to her mental health symptoms as well as the generally unremarkable objective findings from this examination (Ex 10F). Specifically, the claimant reported that her mood was "pretty down today," but she was otherwise observed as cooperative, friendly, and willing to participate in the evaluation (Ex 10F p. 4). Likewise, despite evidence that she was long-winded and somewhat tangential in her speech in combination with some issues with her recall and serial threes, her thought process was organized, rational, and goal-oriented; she did not display evidence of perceptual or thought content abnormalities; and she was alert and fully oriented (Ex 10F). The opinion is generally consistent with the longitudinal record, which demonstrates that the claimant's mental impairments are generally controlled despite some breakthrough

issues largely attributed to the effects of her physical issues and other situational stressors (Ex 17F; 18F; 25F; 31F p. 25). The opinion statement itself is generally vague – including reference to her "typical" environment and that her ability to complete tasks would depend on her motivation – and thus provides little insight into the claimant's function-by function mental abilities. Nevertheless, the assessment supports the finding that her mental impairments cause no more than mild limitations on her functional abilities in the workplace. Thus, to this extent, this assessment is considered generally persuasive.

(Tr. 1263-1265.)

As an initial point, as the Commissioner points out in his brief, the ALJ's opinion is supported by the opinions of multiple doctors.  I recognize Elizabeth Bucolo, Psy.D. and Steve Brown, M.D., only reviewed the medical evidence when determining that Ms. Weatherly's depression and anxiety were not "severe" impairments.  (Tr. 71-72, 90-91.)  But Benjamin J. Silber, Ph.D., completed an in person Mental Diagnostic Evaluation of Plaintiff.  (Tr. 1051-1057.) While he diagnosed Plaintiff with "Major Depressive Disorder, Mild, with anxious distress," (Tr. 1055), he found Ms. Weatherly was not limited at all by her mental impairments.  (Tr. 1055-1057.)  These doctor's evaluations alone constitute substantial evidence upon which the ALJ could rely.

In her Reply Brief, Ms. Weatherly argues, *inter alia*, that the ALJ incorrectly relied on her successfully working with her impairments over the years and failed recognize her "subsequent deterioration of her mental state as of her alleged onset date of disability and beyond."  (Doc. No. 15 at 1-5.)  Yet, the fact Plaintiff could engage in substantial gainful activity despite her impairment is dispositive on her claim of disability.  A condition that was not disabling during working years, and which has not worsened[3], cannot be used to prove present disability.  *Naber*

---

[3] The record reveals Plaintiff improved with treatment and therapy.  (Tr. 343, 403, 405-06, 1048, 1096, 1128-1133, 1725.)

*v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994); *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990).

I have also carefully considered Plaintiff's argument regarding the ALJ's failure to consider her non-severe mental impairments when formulating her residual functional capacity. (Doc. No. 12 at 21-25.)   I find this argument to be without merit.   I fully credit the Commissioner's argument on this point.

Regarding incontinence on her residual functional capacity assessment, Ms. Weatherly argues:

> The ALJ fails to define what he means by "proximity to a restroom in the workplace," and his  RFC finding does not account for the need of "proximity to a restroom in the workplace." The ALJ's RFC finding merely provides that Weatherly "could have no offsite work away from restroom facilities" (Tr. 1267, Finding No. 5), but does not account for the need to have "proximity to a restroom in the workplace" (emphasis added). If Weatherly required "proximity to a restroom in the workplace," merely limiting her to "offsite work away from restroom facilities" does not account for Weatherly's need "in the workplace." Nor does it inform this Court of what degree of proximity to a restroom in the workplace Weatherly required.

(*Id.* at 25-26.)

The Commissioner counters, "Plainly implicit in the ALJ's step four finding is that the onsite performance of her past relevant work as a trucking dispatcher would involve proximity to a restroom.   Again, in reviewing the record in the "light most favorable" to the ALJ's determination, the Court "must strive to harmonize statements where possible."" (Citation omitted) (Doc. No 14 at 15.)   I agree.   And at the administrative hearing, the ALJ's hypothetical question posed to the vocational expert merely included the limitation of, "And no off-site work away from restroom facilities."   (Tr. 1308.)   Daniel Allen Webb, Esq., appeared at the hearing on behalf of Plaintiff and, according to the docket sheet, presently serves as one Ms. Weatherly's lead attorneys. He was offered a chance to clarify the ALJ's question - but did not.   (Tr. 1310-1311.)   Not trying to be too hard on Mr. Webb, because there was a lot of information conveyed at the administrative

hearing - but the burden was Ms. Weatherly's.

Plaintiff has advance other arguments that I have considered and I find to be without merit. Ms. Weatherly has a number of issues, and I am sympathetic to her claims.   Yet, I am simply unable to find support in the record to merit reversal of the ALJ's decision in this case.   Plaintiff has simply not met her burden of proving she is disabled.  *E.g., Sykes v. Bowen*, 854 F.2d 284, 285 (8th Cir. 1988); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

Ms. Weatherly's counsel has done an excellent job of advocating for her rights in this case. Yet, as the Commissioner points out, it is not the task of a court to review the evidence and make an independent decision.   Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.   The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.  *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

I have reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.   There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).   The Commissioner's decision is not based on legal error.

IT IS, THEREFORE, ORDERED that the final decision of the Commissioner is affirmed, and Plaintiff's Complaint is dismissed with prejudice.

DATED this 2nd day of April, 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE